Adam J Schwartz (Cal Bar No. 251831)
Adam J Schwartz, Attorney at Law
5670 Wilshire Blvd, Suite 1800
Los Angeles, CA 90036
Telephone: (323) 455-4016
adam@ajschwartzlaw.com

*Attorneys for Plaintiff and the Classes*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHAEL TRUJILLO,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**AGE OF LEARNING, INC.,** a Delaware corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Michael Trujillo ("Trujillo" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Age of Learning, Inc. ("Age of Learning" or "Defendant") to stop Age of Learning from violating the Telephone Consumer Protection Act by sending unsolicited, autodialed text messages to consumers, and to otherwise obtain injunctive and monetary relief for all persons injured by Age of Learning's conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1. Plaintiff Trujillo is an Apple Valley, California resident.

2. Defendant Age of Learning is a Delaware registered corporation headquartered in Glendale, California. Defendant Age of Learning conducts business throughout this District, the state of California, and the United States.

**JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District and because Plaintiff resides in this District.

**INTRODUCTION**

5. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." See 47 U.S.C. §227 (b)(1)(A)(iii).

6. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

7. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

8. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

CLASS ACTION COMPLAINT
-3-

13. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 alone, at a rate of 168.8 million per day. *See* "Youmail", www.robocallindex.com (last visited April 9, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. *See id*.

14. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## INTRODUCTION

17. Defendant Age of Learning develops and produces digital learning content for children.[3]

18. Defendant Age of Learning operates ABCmouse.com, a website that offers a paid subscription service that develops learning programs with an online curriculum for children.[4]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/age-of-learning-inc./about/
[4] *Id*.

19. Defendant Age of Learning utilizes affiliates and third-party sales agents in order to promote ABCmouse.com and other paid services that it sells to consumers.

20. Affiliates and third-party sales agents are paid by Defendant Age of Learning for every sign up their agent/affiliate creates.

21. Age of Learning's affiliates and third-party sales agents rely on telemarketing in order to market Defendant Age of Learning's services, including the sending of text messages.

22. These text messages are being sent to consumers using an autodialer without obtaining prior express written consent.

23. Age of Learning or an agent working on behalf of Age of Learning sent an unsolicited, autodialed sales text message to Plaintiff.

24. In response to this text message, Plaintiff files this class action lawsuit seeking injunctive relief, requiring Defendant and/or its agents to cease placing unsolicited, autodialed phone calls to cellular telephone numbers, as well as an award of statutory damages to the members of the Class.

## COMMON ALLEGATIONS

**AGE OF LEARNING OPERATES MULTIPLE AFFILIATE PROGRAMS TO MARKET ITS PAID SERVICES**

25. There are many references online regarding Age of Learning's use of affiliates and affiliate programs to sell their subscription services.

26. In 2013, Age of Learning announced that it was paying $4 per subscription sign up to any affiliate who initiates a consumer to sign up for Age of Learning's services.

[5]

27. The keyword policies that Age of Learning instituted for its affiliates allows its affiliates to use its tradenames like ABCmouse.com in ads.

28. As of April 2020, Defendant Age of Learning is still paying $4 for every subscription sign-up to its affiliates. For example, Sovrn//Commerce posted the following for new Age of Learning affiliates:

[6]

---

[5] https://www.eaccountable.com/blog/merchant-monday/hot-off-the-press-abcmouse-com-announces-4-affiliate-payout-on-every-subscription-sign-up/
[6] https://www.viglink.com/merchants/716/abcmouse.com-affiliate-program

CLASS ACTION COMPLAINT
-6-

29. In addition, the text message that Plaintiff received clearly states the name ABCmouse, showing that the initial guidelines Age of Learning established are still in effect.

30. Age of Learning published affiliate programs on affiliate networks such as CJ Affiliate, FlexOffers, Viglink as of March 31, 2020:

> Knoji Staff • 267  Mar 31, 2020
>
> Yes, ABCmouse.com does have an affiliate program. Using their affiliate or referral program, you can earn commissions by referring new customers via the ABCmouse.com website. We researched the popular affiliate networks, and here's what we found about where you can join ABCmouse.com's affiliate program:
>
> - Skimlinks: Yes (may not be active, last active in March 2020) — Check status →
> - Viglink: Yes — Apply →
> - ShareASale: Unlikely — Check status
> - Awin (Affiliate Window): Unlikely — Check status
> - FlexOffers: Yes (may not be active, last active in March 2020) — Check status →
> - Commission Junction (CJ, Conversant): Yes — Apply →
> - Rakuten Marketing (Linkshare): Yes (may not be active, last active in March 2020) — Check status →
> - Pepperjam: Yes (may not be active, last active in March 2020) — Check status →
> - Impact Radius (Impact.com): Unlikely — Check status
> - Avantlink: Unlikely — Check status
> - Webgains: Unlikely — Check status
> - Direct: Unlikely — Check status

[7]

**AGE OF LEARNING IS RESPONSIBLE FOR THE TELEMARKETING PRACTICES THAT ITS AFFILIATES ENGAGE IN TO GENERATE NEW BUSINESS**

31. Defendant Age of Learning benefits financially from every subscription that is sold by its affiliates.

32. A subscription to ABCmouse.com will cost the consumer $9.95 per month, after receiving the free first month.[8]

33. Defendant Age of Learning hires employees that specifically manage their affiliate network, such as Nathan Warburton, an Age of Learning Affiliate Manager.

---

[7] https://abcmouse.knoji.com/questions/abcmousecom-affiliate-programs/
[8] https://www.abcmouse.com/

Warburton's roll as Affiliate Manager includes development of a diverse network of partners and affiliates for Age of Learning's products and services.:

[9]

34. Affiliate sites have posted about selling for Age of Learning specifically, warning potential affiliates that affiliate programs require approval with Age of Learning before Age of Learning's products and services can be promoted.

---

[9] https://www.linkedin.com/in/nathan-warburton-4a57481b/

> **Does ABCMouse.com Have An Affiliate Program?**
>
> January 10, 2020 by Michael
>
> This article may contain *affiliate links. Please see our affiliate disclosure for more details
>
> Last Updated on January 29, 2020
>
> ABCmouse is one of the most popular and recognized early education and children's development companies. They operate in dozens of countries and offer full online children's learning curriculum.
>
> If you are an affiliate marketer in the early education space, it would be nice to be able to promote them through an affiliate program.
>
> Does ABCMouse.com Have An Affiliate Program? **At the time of publication, ABCMouse has an affiliate program listed with Commission Junction. The affiliate program requires approval with ABCmouse before you can promote their products and services.** [10]

35.     However, Age of Learning has spread itself too thin by running campaigns through multiple affiliate networks and through multiple partner sites with no real way to ensure that affiliates are abiding by any rules or methods.

36.     The Federal Communication Commission has provided instruction stating that sellers such as Age of Learning may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted)

---

[10] https://runtheaffiliatemarket.com/does-abcmouse-have-an-affiliate-program/

## LEGALITY OF AUTODIALED TEXT MESSAGES

37. Age of Learning affiliate agents use an autodialer in order to send text messages to consumers on behalf of Defendant Age of Learning.

38. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines," and for all calls to numbers registered on the DNC. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶¶ 2, 20-21 (Feb. 15, 2012)

39. Yet in violation of this rule, Defendant and/or its affiliates fail to obtain any express written consent prior to sending autodialed solicitation text messages to potential subscribers.

40. In sending the unsolicited text messages at issue, the Defendant, or a third party acting on its behalf, used an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator. This is evident from the circumstances surrounding the text messages, including the ability to opt out of recurring texts by replying "cncl," the text messages' commercial and generic content, and that substantively identical texts were sent to multiple recipients, which is consistent with the use of an automatic telephone dialing system to send text messages.

CLASS ACTION COMPLAINT
-10-

**Plaintiff Received an Unsolicited Autodialed Text Message to His Cell Phone**

41. On April 17, 2020 at 7:41 AM, Plaintiff Trujillo received an autodialed text message on his cell phone from, or on behalf of Defendant Age of Learning using phone number 833-864-2422:



42. Phone number 833-864-2422 is not in service.

43. When https://ickgu.com/D2765 is visited, it leads to https://www.abcmouse.com/landing/aff:admediary:abc:3?aff_id=183896541&sub_id=legacy0417b&creative_id=1706.[11]

44. The text message is a solicitation, as the landing page solicits the visitor to subscribe to ABCmouse.com for $9.95 per month and receive the first month free:

---

[11] ▸ 🔒 https://ickgu.com
▸ 🌐 http://zipperstrm.com
▸ 🔒 https://collector-pxss13u803.px-cloud.net
▸ 🔒 https://risinginferno.com
▸ 🔒 https://www.abcmouse.com
 - Based on an investigation using Charles, a URL tracking service on April 17, 2020

CLASS ACTION COMPLAINT
-11-


[12]

45. The text message was sent by an affiliate of Defendant Age of Learning and can be tracked through the various channels the consumers is led through until its final destination on abcmouse.com



46. Plaintiff believes the text message was sent using an autodialer due to its generic text, which makes no reference to Plaintiff himself, because the text message tells Plaintiff that he can opt-out by replying "cncl" and because the text was sent using a phone number that is not in service.

47. Plaintiff has never had a relationship with Defendant Age of Learning and has never provided Age of Learning or its affiliates express written consent to contact him.

---

[12] https://www.abcmouse.com/landing/aff:admediary:abc:3?aff_id=183896541&sub_id=legacy0417b&creative_id=1706

CLASS ACTION COMPLAINT
-12-

48. The unauthorized text message sent by, or on behalf of Defendant Age of Learning, as alleged herein, has harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Trujillo's use and enjoyment of his cellular phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

49. Seeking redress for these injuries, Trujillo, on behalf of himself and a Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed text messages to cellular telephones.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims

50. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

> **Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) texted, (2) to the person's cellular telephone number, (3) using a text message platform similar to the platform Defendant used to text Plaintiff, (4) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to text Plaintiff, or (b) it did not obtain prior express written consent.

51. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons;

and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definition following appropriate discovery.

52. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

53. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

 (a) whether Defendant, or an agent on behalf of Defendant used an automatic telephone dialing system to send text messages to Plaintiff and the members of the Autodialed No Consent Class;

 (b) whether Defendant, or an agent on behalf of Defendant sent text messages to Plaintiff and the members of the Autodialed No Consent Class without prior express written consent;

 (c) whether Defendant's conduct constitutes a violation of the TCPA; and

 (d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

54. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Class.

55. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a

whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class, not on facts or law applicable only to Plaintiff.  Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed No Consent Class)**

56.    Plaintiff repeats and realleges paragraphs 1 through 55 of this Complaint and incorporates them by reference.

57.    Defendant and/or its agents sent unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using an autodialer.

58.    These solicitation text messages were sent *en masse* without the consent of the Plaintiff and the other members of the Autodialed No Consent Class to receive such solicitation text messages.

59.    Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are

each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

60.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Trujillo, individually and on behalf of the Class, prays for the following relief:

a) An order certifying the Class as defined above, and appointing Plaintiff as the representative of the Class and his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a jury trial.

Respectfully Submitted,

**MICHAEL TRUJILLO**, individually and on behalf of those similarly situated individuals

Dated: May 14, 2020

By:  /s/ *Adam J Schwartz*
Adam J Schwartz (Cal Bar No. 251831)
Adam J Schwartz, Attorney at Law
5670 Wilshire Blvd, Suite 1800
Los Angeles, CA 90036
Telephone: (323) 455-4016

CLASS ACTION COMPLAINT
-16-

adam@ajschwartzlaw.com

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff and the putative Classes*